BROWN, Chief Judge.
| ]Defendants, Brookshire Grocery Co. and Katy Buntyn, appeal from the judgment of the trial court finding them liable for damages suffered by plaintiffs, Sarah Ann Hollier and Bobby Hollier, as a result of Mrs. Hollier receiving an excessive dosage of Decadron. For the following reasons, we affirm.

*1131
Facts and Procedural Background

On March 13, 2008, plaintiff, Sarah Hol-lier, visited her physician, Dr. Gregory Green, for treatment of bronchitis. Dr. Green wrote prescriptions for several medications, one of which was for a Decadron Dose Pak. Plaintiff took the prescriptions to Super One Pharmacy,[1] where Katy Bun-tyn was the pharmacist on duty and Rachel Graves was the licensed pharmacy technician assisting.
Ms. Buntyn, who had only been licensed for one year, was familiar with Decadron, but not the Decadron Dose Pak, which unbeknownst to her had been discontinued in 2004. After a search through the pharmacy’s computer revealed that they did not have a Decadron Dose Pak, Ms. Bun-tyn called the Walgreen’s Pharmacy across the street to see if they had one available; they did not. Thereafter, Ms. Buntyn instructed Ms. Graves to call Dr. Green’s office for clarification on how to fill the prescription. Ms. Graves spoke to Kristy Hotard, Dr. Green’s nurse, and asked her how Dr. Green wanted the prescription filled. According to Ms. Graves’ testimony, and the information noted on the prescription by Ms. Graves, Ms. Hotard | {Instructed her to fill the prescription with 4 mg tablets and to do a “step down dosage.” Ms. Buntyn filled the prescription accordingly.
The next day (Friday) Mrs. Hollier began taking the prescription as ordered. Initially, Mrs. Hollier experienced feelings of extreme energy, then ultimately feelings of sleeplessness, increased heart rate, and nausea. Mr. Hollier, a licensed pharmacist himself, recognized her symptoms as effects of Decadron, so on the third day (Sunday) he advised her to stop taking the Decadron prescription.
After another day or two of Mrs. Hollier’s continued symptoms, Mr. Hollier decided to look at the bottle that contained the Decadron. Mr. Hollier immediately noticed that the Decadron tablets were 4 mg each, as opposed to 0.75 mg tablets that the Decadron Dose Pak contained when it was on the market. Mr. Hollier immediately called the pharmacy to report the mistake. He spoke with Greg Slocum, the chief pharmacist.
After receiving the phone call from Mr. Hollier, Mr. Slocum investigated the matter. He reviewed the materials in the office, which included the prescription with the handwritten note showing a 4 mg step down dosage, per Kristy at Dr. Green’s office. Mr. Slocum then called Dr. Green’s office, at which time, according to Mr. Slocum’s testimony, Kristy confirmed that she had instructed Ms. Graves to fill the prescription with 4 mg tablets.
The Holliers filed suit against Brook-shire Grocery Company and Katy Buntyn. The matter was heard in Monroe City Court on September 21, 2009. The trial court issued its reasons for judgment on November 16, |s2009, finding in favor or plaintiffs and awarding Mrs. Hollier $7,500 in general damages, $827.08 for medical bills, and costs, and Mr. Hollier $1,500 in general damages. Defendants have appealed, contending liability and the amount of damages awarded. Plaintiffs answered the appeal urging inadequacy of the damages awarded.

Discussion

Defendants contend that the trial court erred in determining that Ms. Buntyn breached the standard of care she owed to plaintiff.
Establishing liability for damages in a negligence case requires a plaintiff to prove the following: (1) that the defendant *1132 had a duty to conform his conduct to a specific standard (the duty element); (2) that the defendant’s conduct failed to conform to the appropriate standard (the breach element); (8) that the defendant’s substandard conduct was a cause-in-faet of the plaintiffs injuries (the cause-in-fact element); (4) that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); (5) proof of actual damages (the damages element). McKee v. Wal-Mart Stores, Inc., 06-1672 (La.App. 1st Cir.06/08/07), 964 So.2d 1008, writ denied, 07-1655 (La.10/26/07), 966 So.2d 588.
A pharmacist has a duty to fill a prescription correctly and to warn the patient or to notify the prescribing physician of an excessive dosage or of obvious inadequacies on the face of the prescription which create a substantial risk of harm to the patient. Guillory v. Dr. X, 96-85 (La.App. 3d Cir.08/28/96), 679 So.2d 1004.
14An appellate court may not set aside a finding of fact by a trial court in the absence of manifest error or unless it is clearly wrong. Further, where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Hayes v. Travelers Ins. Co., 609 So.2d 1084 (La.App. 2d Cir.1992), writ denied, 613 So.2d 975 (La.1993).
Defendants argue that by calling Dr. Green’s office after learning that Decadron Dose Paks were no longer on the market, Ms. Buntyn fulfilled the duty owed by her to plaintiff. This argument, however, fails to address a primary contention of plaintiff, which is that Ms. Bun-tyn filled the Decadron prescription with an initial daily dosage amount of more than two and one-half times what the De-cadron package insert states as the top end of an initial daily dosage, and eight times what was actually intended by Dr. Green.
The Decadron package insert put into evidence by plaintiff, which Ms. Buntyn testified she read prior to filling plaintiffs prescription, states: “The initial dosage varies from 0.75 mg to 9 mg a day depending on the disease being. treated.” Had Ms. Buntyn filled the prescription as intended, plaintiff would have taken a daily dosage of 3 mg the first day, 3 mg the second day, and 1.5 mg the third day. Instead, following the instructions given to her by Ms. Buntyn, plaintiff took 24 mg the first day, 20 mg the second day, and 16 mg the third day, which is when she stopped taking the medication. The trial court found that Ms. Buntyn’s filling the prescription with such a high dosage, compared to what the prescribing physician | ^intended, amounted to a breach of duty; we do not find this determination to be clearly wrong.
A pharmacist has a duty to warn a patient or notify the prescribing physician of (1) an excessive dosage, or (2) obvious inadequacies on the face of the prescription. Ms. Buntyn claims that when she learned that Decadron no longer came in Dose Pak form she had her pharmacy technician call Dr. Green’s office to notify them of the mistake and to find out how to proceed. According to Ms. Graves’ notations on the prescription, Dr. Green’s nurse, Kristy, said to fill the prescription with 4 mg loose tablets, to be taken in “step down dosage.” Relying solely on this newly altered prescription, Ms. Bun-tyn filled the prescription with an excessive dosage. Clearly, the fact that the package insert lists the top end of an initial daily dosage of Decadron at 9 mg should have aroused Ms. Buntyn’s suspicions that a 24 mg initial daily dosage was excessive. Ms. Buntyn should have in *1133 quired further. As such, we do not find that the trial court was manifestly erroneous in its finding that Ms. Buntyn breached her duty to plaintiff by supplying her with an excessive dosage of Decadron.
Next, all parties argue that the trial court erred in its assessment of damages.
The standard of review applicable to a general damages award is the abuse of discretion standard. Bouquet v. Wal-Mart Stores, Inc., 08-0309 (La.04/04/08), 979 So.2d 456. The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. Id. ROnly after a review of the facts reveals that a trier of fact has abused its discretion, is it appropriate for the appellate court to resort to a review of prior similar awards. Cone v. National Emergency Serv. Inc., 99-0934 (La.10/29/99), 747 So.2d 1085.
A review of the facts show that plaintiff spent an extended period of time feeling the ill effects of the overdose. She and her husband feared and continue to fear for her overall well being and the possibility that she may suffer a heart attack or other long term damage. As a further result of the overdose, plaintiff had to miss work and undergo multiple days of medical testing. Based upon these facts we cannot conclude that the trial court abused its discretion in making any of the damages awards

Conclusion

For the foregoing reasons, the judgment of the trial court finding defendants, Brookshire Grocery Co. and Katy Buntyn, liable for damages sustained by plaintiffs, Sarah Ann Hollier and Bobby Hollier, is hereby affirmed. Costs of this appeal are assessed to defendants.

. Super One Pharmacy is owned and operated by Brookshire Grocery Company.